***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On August 8, 2001, the day of the alleged injury by accident or occupational disease giving rise to this claim, the above-noted parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On August 8, 2001, an Employee/Employer relationship existed between Plaintiff and Employer.
3. On August 8, 2001, the carrier on the risk was Travelers Insurance.
4. The parties agree that Plaintiff's average weekly wage will be determined by the Industrial Commission based on a Form 22 that was prepared by Defendants and submitted at the deputy commissioner hearing of this matter.
5. The parties agree that all Industrial Commission forms may be received into evidence.
6. The parties submitted a package of Stipulated Exhibits. The first Exhibit comprised pages 1-178 and included medical records of Dr. Mark Moody, Injury Reports, Attendance Calendars, LTD/STD Records, the Employer's Medical File, Medical Leave Forms, Notes, the General Employee File and Plaintiff's Discovery Responses. The Second Exhibit comprised pages 1-221 and included Plaintiff's Employment Records, Recorded Statement, Industrial Commission Forms, and Medical Records of the Plaintiff. Subsequent to the hearing, the parties stipulated into evidence additional records from Dr. Hill (6 pages).
7. The parties contend the issues to be determined by the Industrial Commission are:
 a. Did Plaintiff experience a compensable injury by accident or occupational disease on or about August 8, 2001?
 b. If Plaintiff experienced a compensable injury by accident or occupational disease on or about August 8, 2001, what compensable consequences flow from said injury by accident or occupational disease?
 c. To what, if any, indemnity compensation is Plaintiff entitled as a result of the accident injury or occupational disease of August 8, 2001?
 d. To what, if any, medical compensation is Plaintiff entitled as a result of the accidental injury or occupational disease on or about August 8, 2001?
 ***********
Based upon all the competent evidence of record, the Full Commission finds as fact and concludes as a matter of law the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Hoag, Plaintiff was 42 years old with a date of birth of March 26, 1959. Plaintiff is a high school graduate.
2. Plaintiff was employed with Defendant for approximately four years, during which she worked in the Veneer Department making and inspecting tabletops.
3. In performing her duties, Plaintiff taped pieces of veneer to tabletops at a workstation (which was a long table with lights above it). Plaintiff stood to perform her work with her head in a flexed position to allow her to look down at the product on which she was working. Plaintiff lifted pieces of veneer, as well as finished pieces of furniture. Plaintiff worked with a co-worker.
4. On August 8, 2001, Plaintiff performed the exercises required by Defendant at the beginning of the work shift. While lifting a 15-pound board, which is used as a weight to hold down the veneer, Plaintiff felt an immediate onset of pain in her neck, radiating down into her right arm causing her to drop the board. Plaintiff reported being sick to the stomach and breaking out in a sweat, which is noted in the 8-14-01 report of accident or injury.
5. Plaintiff was escorted by a co-worker to an office, where her husband was contacted. A co-worker carried Plaintiff's purse to the office and Plaintiff's husband came to get Plaintiff.
6. Plaintiff was seen on the date of injury, August 8, 2001, by Dr. Plemmons, a physician practicing with the SOMA group. Dr. Plemmons' office indicated that Plaintiff had experienced an injury while picking up a board.
7. Plaintiff was next seen on August 13, 2001 by Dr. Mark Moody, an orthopedic surgeon. Plaintiff told Dr. Moody that she had picked up a board weighing approximately 15 pounds on August 8, 2001 and had felt a catch and severe onset of pain in her neck that radiated into the right upper extremity.
8. Dr. Moody had previously examined Plaintiff in June and July 2001. Plaintiff presented to Dr. Moody on June 26, 2001 as a result of headaches and neck pain. Dr. Moody recommended that Plaintiff undergo an MRI scan.
9. Plaintiff returned to Dr. Moody on July 10, 2001. Dr. Moody reviewed the MRI results with Plaintiff. Dr. Moody interpreted the MRI as revealing severe pressure on the spinal cord at both C4-5 and C5-6 with narrowing of the bony tunnels from which nerves exit at the cervical spine.
10. On July 10, 2001, Dr. Moody recommended that Plaintiff stay out of work and have surgery. Plaintiff said she wanted a second opinion. Plaintiff told Dr. Moody that she had returned to work and was working in her regular job.
11. Plaintiff took a leave of absence from work on April 23, 2001 and returned to work on July 9, 2001. While Plaintiff was out of work, she received disability benefits in a net amount of $210.09 per week. Despite the fact that Plaintiff was receiving disability benefits, Plaintiff elected to return to work instead of proceeding with surgery as was recommended by Dr. Moody.
12. Plaintiff returned to work on July 9, 2001 and worked her regular job until the incident of August 8, 2001. On August 8, 2001, Plaintiff experienced a specific traumatic incident while lifting a board from a veneer tabletop during the regular course of her work.
13. Plaintiff returned to Dr. Moody on August 13, 2001. Dr. Moody testified, and the Full Commission finds as fact, that Plaintiff aggravated her pre-existing cervical condition when she picked up the board in the course of her employment.
14. Dr. Moody testified that Plaintiff's clinical symptoms had worsened between the July 10, 2001 and August 13, 2001 evaluation. Plaintiff testified she had experienced no right arm pain prior to August 8, 2001. This was confirmed by Dr. Moody. Dr. Moody testified, and the Full Commission finds as fact, that after the incident of August 8, 2001, Plaintiff presented with right arm pain, which was a new and different symptom. In addition, Plaintiff presented to Dr. Moody on August 13, 2001 with increased complaints of additional pain and increased weakness.
15. Plaintiff underwent surgery on August 13, 2001. This surgery involved removing two discs at C4-5 and C5-6, removal of small spurs, which were present in the bony tunnels in the nerve roots, and placing a bone graft obtained from Plaintiff's anterior iliac crest in this area of Plaintiff's cervical spine. Dr. Moody testified that the incident of August 8, 2001 resulted in Plaintiff having the surgery performed on August 17, 2001. Dr. Moody restricted Plaintiff from working as of August 8, 2001, the date of the-injury. As of Dr. Moody's deposition on February 19, 2001, Plaintiff had not been released to return to work.
16. Based on the Form 22, Plaintiff's average weekly wage is $370.79, which yields a compensation rate of $247.20.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff experienced a compensable specific traumatic incident on August 8, 2001 as she was lifting a board at work. N.C.G.S. § 97-2(6).
2. As a result of this specific traumatic incident, Plaintiff experienced a material aggravation of her pre-existing cervical problems. Morris v. Burlington Industries, 304 N.C. 1, 282 S.E.2d 458
(1981).
3. As a result of Plaintiff's specific traumatic incident of August 8, 2001, which resulted in a material aggravation of her pre-existing cervical condition, Plaintiff has been totally disabled from August 8, 2001 through the deputy commissioner hearing, and her disability was continuing. N.C.G.S. § 97-29.
4. Plaintiff is entitled to have Defendants pay for all medical expenses incurred or to be incurred as a result of Plaintiff's injury by accident for so long as such evaluations, examinations and treatment are reasonably required to effect a cure, give relief, and tend to lessen Plaintiff's period of disability, including the back surgery performed by Dr. Moody. N.C.G.S. §§ 97-25, 97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation to Plaintiff for temporary total disability at the rate of $247.20 per week from August 8, 2001 and continuing until Plaintiff returns to work or until further Order of the Commission, subject to the attorney's fees hereinafter provided in Paragraph 3 of this Award.
2. Defendants shall pay all medical expenses incurred to date or to be incurred by Plaintiff as a result of her compensable injury by accident of August 8, 2001, for so long as such evaluations, examinations and treatments may be reasonably required to effect a cure, give relief, or tend to lessen Plaintiff's period of disability, including the back surgery performed by Dr. Moody.
3. A reasonable attorney's fee of 25% of the compensation awarded to Plaintiff is approved for Plaintiff's counsel. Twenty-five percent of the lump sum due Plaintiff shall be deducted from that sum and paid directly to Plaintiff's counsel. Thereafter, Plaintiff's counsel shall receive every fourth compensation check.
4. Defendants shall pay the costs.
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER